5535-10218

CHARLES K. BRUNN, #28021
MAHANVIR S. SAHOTA, #245501
LAW OFFICES OF BRUNN & FLYNN
A Professional Corporation
928 – 12th Street, Suite 200
Modesto, CA 95354
Telephone: (209) 521-2133
Facsimile: (209) 521-7584

Attorneys for Plaintiffs,
STANISLAUS TOWING & RECOVERY SERVICES, INC., (a California Corporation),
RON HANNINK and STEPHANIE HANNINK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO FACILITY

| | |
|---|---|
| STANISLAUS TOWING & RECOVERY SERVICES, INC., (a California Corporation), RON HANNINK and STEPHANIE HANNINK <br><br> Plaintiff, <br><br> v. <br><br> CITY OF MODESTO, KAREN ROBERTSON and DOES 1 – 50, inclusive, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS and BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)** |

PLAINTIFFS STANISLAUS TOWING & RECOVERY SERVICES, INC, RON HANNINK, and STEPHANIE HANNINK allege as follows:

### PRELIMINARY ALLEGATIONS

1.    This action arises under Title 42 of the United States Code, Section 1983. The jurisdiction of this Court over the subject matter of this action is predicated on Title 28 of the United States Code, Section 1331. The court further has jurisdiction over the state law claims for Breach of Contract and Declaratory Relief under Title 28 of the United States Code Section 1367 as said claims are closely related to and intricately intertwined with the federal claims. The unlawful acts and practices alleged herein occurred in the City of Modesto, California, which is within this judicial district.

2.    Plaintiff STANISLAUS TOWING & RECOVERY SERVICES, INC. (hereinafter, "STANISLAUS TOWING"), is a corporation organized under the laws of the State of California with its principal place of business in the State of California.

5535-10218

3.      Plaintiffs RON and STEPHANIE HANNINK are residents of the County of Stanislaus, State of California which is within this district.   RON and STEPHANIE HANNINK are owners, principals, agents, and/or employees of plaintiff STANISLAUS TOWING.

4.      At all times herein mentioned, defendant CITY OF MODESTO (hereinafter, "CITY") was, and currently is, a public entity organized and chartered under the laws of the State of California.

5.      At all times mentioned herein, defendant KAREN ROBERTSON was a community service officer employed by the CITY OF MODESTO by and through the Modesto Police Department.

6.      Defendants DOES 1 through 50, inclusive, are sued in this complaint under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this complaint, and that plaintiff's damages as alleged in this complaint were proximately caused by those defendants.

7.      Plaintiffs are further informed and believe, and thereon allege, that all times herein mentioned, defendants DOES 1 through 50 were the agents and employees of defendant CITY, and in doing the things hereinafter alleged, were acting in the scope of their agency and employment and with the consent of defendant CITY.

8.      Plaintiffs are required to comply with an administrative claim requirement under California law. Plaintiffs have complied with all applicable requirements.

**FACTUAL BACKGROUND**

9.      On or about August 2, 2006, plaintiffs entered into a Tow Service Agreement with defendant CITY wherein it was agreed that for full consideration paid therein, defendant CITY would, through its police department, retain the services of plaintiff for towing and place plaintiff on a list of approved Towing Service providers for the City of Modesto.

10.     On or about April 13, 2009, plaintiffs and defendant CITY entered into a new FRANCHISE TOW AGREEMENT (hereinafter, "Agreement") which superseded the previous agreement described in paragraph 6, above. A true and correct copy of said Agreement is attached hereto as **Exhibit A.**

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS and BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)**

5535-10218

1       11.     The Agreement at Paragraph 21 states that a Franchisee's failure to meet any of the terms

2  and conditions of the Agreement constitute a failure to provide adequate service.  In addition, the

3  Agreement provides that a Franchisee that receives three violations for failure to provide adequate service

4  within a twelve month period will be suspended from providing Tow Services for defendant CITY for 30

5  days.   The Agreement also provides that following reinstatement after the 30 day suspension, the

6  violation count resets.  If a Franchisee is suspended twice within a three year period, the Agreement is

7  terminated with respect to that Franchisee.

8       12.     Under paragraph 23(A) of the Agreement, a FRANCHISEE is permitted to request a

9  review of a violation within seven days of the receipt of the notice of violation by submitting a written

10  request for review to the Administrative Services Sergeant.  The Administrative Services Sergeant is

11  required to provide a decision within ten business days after review of completed.  The Administrative

12  Services Sergeant is merely required to complete the review of the violation "as soon as practicable."

13       13.     Under paragraph 23(B) of the Agreement, a FRANCHISEE may request an appeal of the

14  decision issued by the Administrative Services Sergeant by submitting a written request for appeal to the

15  Chief of Police for the Modesto Police Department within seven days of receipt of the decision by the

16  Administrative Services Sergeant.  No further appeal is provided for in the Agreement.

17       14.     Shortly after the execution of the Agreement, employees of the City of Modesto, DOES 1

18  through 10, commenced a pattern of activity in which they unfairly, improperly, violated plaintiffs rights

19  to Free Speech and Due Process.  Employees of the Modesto Police Department specifically targeted

20  plaintiffs for violations under the Agreement on unjustified and improper bases.   The sole reason for

21  defendants' conduct was to drive plaintiffs out of business.

22       15.     In or around December of 2009, plaintiffs were suspended from defendant CITY's tow

23  rotation list based on the Modesto Police Department's issuance of three violations under the Agreement.

24  Despite the fact the violations in question were without merit, and the underlying charges were often

25  dismissed, plaintiffs' attempts to appeal the violations and the suspension were rejected without proper,

26  effective, and Constitutionally sufficient administrative review and Due Process.   Plaintiffs were

27  suspended for a one month period and lost significant income due to defendants' actions.

28  ///

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS and BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)**

5535-10218

16.     On or about August 18, 2010, plaintiffs were again informed that they would be suspended for a one month period due to the issuance of three more violations by the Modesto Police Department in the preceding months. In addition, plaintiffs were informed that after the suspension, they would be terminated from the Agreement as it was the second suspension within a three year period.

17.     On or about August 26, 2010, plaintiff STANISLAUS TOWING filed a complaint in the Superior Court of the County of Stanislaus requesting injunctive relief to prevent the termination of the Agreement. By agreement of the parties, the suspension and termination were to be set aside. Defendant CITY, through its City Attorney, agreed that plaintiffs had not been provided adequate Due Process and Administrative review and promised to change the procedure for review of violations issued under the Agreement.

18.     On or about February 22, 2011, plaintiffs were informed by employees of the Modesto Police Department that they were to be unilaterally terminated from the tow rotation list due to the filing of criminal charges against them. Said charges were filed on February 25, 2011. Plaintiffs were not provided any adequate recourse for administrative review of the decision to terminate.

19.     On or about April 11, 2011, plaintiffs submitted a Claim for Money or Damages against the CITY OF MODESTO for its termination of the Agreement in accordance with California Government Code Section 911.2. A true and correct copy of said claim is attached hereto as **Exhibit B**.

### FIRST CAUSE OF ACTION

### (CIVIL RIGHTS VIOLATIONS AGAINST ALL DEFENDANTS)

20.     Plaintiffs reallege and incorporate paragraphs 1 through 19, above, by this reference as through fully set forth herein.

21.     Plaintiffs reallege and incorporate paragraphs 1 through 19, above, by this reference as through fully set forth herein.

22.     Defendants KAREN ROBERTSON and DOES 1 – 20, in the past three years, have intentionally and deliberately engaged in a course of conduct against plaintiffs RON and STEPHANIE HANNINK to destroy their livelihood and force them to abandon their Tow Service business. Said Defendants engaged in, inter alia, the following unconstitutional conduct;

///

5535-10218

a. Intentionally and deliberately issuing violations under the Agreement to RON and STEPHANIE HANNINK, and to the employees of STANISLAUS TOWING, with the intent to force a loss of business and eventually cause the termination of the Agreement;

b. Intentionally targeting RON and STEPHANIE HANNINK for making complaints about the conduct of the Modesto Police Department, as well as other Tow Service companies that were in the favor of KAREN ROBERTSON and Does 1 – 20, thereby intentionally limiting the free speech of said plaintiffs;.

c. Intentionally singling out RON and STEPHANIE HANNINK for criminal prosecution in order to remove them from the tow rotation list on or about February 22, 2011;

d. Intentionally denying plaintiffs procedural and substantive Due Process by failing to provide adequate administrative review of the issuance of violations, suspensions, and terminations under the Agreement, in order to deliberately force plaintiffs from the Tow Service business.

23. After approximately October, 2010, defendant CITY, by and through its City Attorney, agreed with plaintiffs contentions that CITY had not provided plaintiffs Constitutionally sufficient substantive and procedural Due Process. Plaintiffs are informed and believe, and thereon allege, that defendant KAREN ROBERTSON and DOES 1- 20 deliberately chose to single out plaintiffs RON and STEPHANIE HANNINK for criminal prosecution in order to ensure that plaintiffs would be terminated from the tow rotation.

24. In engaging in the conduct described herein, Defendants KAREN ROBERTSON and DOES 1- 20 acted under the color of law and in the course and scope of their employment with the CITY OF MODESTO.

25. In doing the acts complained of herein, Defendants KAREN ROBERTSON and DOES 1 – 20, inclusive, and/or each of them, acted under color of law to deprive Plaintiff CONTRERAS of certain constitutionally protected rights, including, but not limited to:

a. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution;

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS and BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)**

5535-10218

b. The right to Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution.

c. The right to Free Speech as guaranteed by the First Amendment to the United States Constitution.

26. Said rights are substantive guarantees under the First and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, plaintiffs pray judgment as set forth below:

## SECOND CAUSE OF ACTION

## (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

27. Plaintiff realleges and incorporates by reference paragraphs 1 through 19, above, as though fully set forth herein.

28. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Agreement except those which were excused by defendant CITY's conduct.

29. Defendants intentionally and wrongfully breached the Agreement when it unilaterally and unjustifiably terminated said Agreement on or about February 22, 2011, in addition to its previous breaches of the Agreement by the wrongful conduct of its employees in suspending plaintiffs from the tow rotation list and in issuing violation without cause.

30. As a proximate result of defendants' wrongful conduct and its breach of the Agreement, plaintiff's business has been damaged in a sum that is currently unknown but believed to exceed $1,000,000.00

31. Plaintiffs timely submitted a claim for damages as required by the California Government Code as a precondition to bringing this Breach of Contract action.

WHEREFORE, plaintiffs pray judgment as set forth below:

## THIRD CAUSE OF ACTION

## (DECLARATORY RELIEF AGAINST DEFENDANT CITY)

32. Plaintiffs reallege and incorporate by reference paragraphs 1 through 19, and 28 through 31, above, as though fully set forth herein.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS and BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

5535-10218

33.   An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that plaintiffs contend the following:

a.   That, pursuant to the Agreement, defendant CITY is required to provide a full hearing for any and all reviews and appeals under paragraph 23 of the Agreement;  and/or

b.   That, pursuant to the Agreement, plaintiff Franchisee is entitled to a hearing before a neutral third party after the decision following an appeal to the Chief of Police; and/or

c.   That, pursuant to the Agreement, the mere issuance of a citation cannot provide the basis for a violation or a failure to provide adequate service until there has been a judicial determination of any citation; and/or

d.   That defendant CITY has breached the Agreement in doing the acts described above and that plaintiffs have not breached the Agreement;  and/or

e.   That defendant CITY may not, pursuant to the Agreement, suspend and/or terminate the Franchise Tow Agreement with plaintiffs; and/or

f.   That the Agreement is a contract of adhesion and that the language in the contract providing for termination of a Franchisee based on the provisions of paragraph 23 of said Agreement is unconscionable and unenforceable as a matter of public policy.

g.   That defendant CITY may not terminate the Agreement unilaterally based on mere allegations of criminal conduct where the conduct alleged does not constitute fraud in the Towing Services business.

Whereas defendant CITY disagrees with and disputes all contentions listed above.

34.   Plaintiffs desire a judicial determination of its rights and duties, and a declaration regarding which parties' interpretation of the Agreement is correct.

35.   A judicial declaration is necessary and appropriate at this time under the circumstances in order that plaintiffs may ascertain their rights and duties under the Agreement.

WHEREFORE, plaintiffs pray judgment as set forth below:

## DEMAND FOR JURY TRIAL

36.  Plaintiffs hereby demand a jury trial.

///

## PRAYER

### As to the First Cause of Action

1. For general damages in an amount according to proof plus damages in such further sums as may be sustained and as are ascertained before final judgment in this action;

2. For punitive damages in a sum according to proof;

3. For reasonable attorney fees;

4. For costs of suit incurred in this action; and

5. For such other and further relief as the court deems proper.

### As to the Second Cause of Action

6. For damages in an amount according to proof plus damages in such further sums as may be sustained and as are ascertained before final judgment in this action;

7. For costs of suit incurred in this action; and

8. For such other and further relief as the court deems proper.

### As to the Second Cause of Action

1. For a declaration that;

   a. Pursuant to the Agreement, defendant CITY is required to provide a full hearing for any and all reviews and appeals under paragraph 23 of the Agreement;  and

   b. Pursuant to the Agreement, plaintiff Franchisee is entitled to a hearing before a neutral third party after the decision following an appeal to the Chief of Police; and

   c. Pursuant to the Agreement, the mere issuance of a citation cannot provide the basis for a violation or a failure to provide adequate service until there has been a judicial determination of any citation; and

   d. Defendant CITY has breached the Agreement in doing the acts described above and that plaintiff has not breached the Agreement;  and

   e. Defendant CITY may not, pursuant to the Agreement, suspend and/or terminate the Franchise Tow Agreement with plaintiff; and

   f. The Agreement is a contract of adhesion and that the language in the contract providing for termination of a Franchisee based on the provisions of paragraph 23

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS and BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)**

5535-10218

of said Agreement is unconscionable and unenforceable as a matter of public policy.

g.   That defendant CITY may not terminate the Agreement unilaterally based on mere allegations of criminal conduct where the conduct alleged does not constitute fraud in the Towing Services business.

2.   For costs of suit herein incurred; and

3.   For such other and further relief as the court may deem proper.

LAW OFFICES OF BRUNN & FLYNN
A Professional Corporation

Dated: August 11, 2011          By:_____

MAHANVIR S. SAHOTA
Attorneys for Plaintiffs
STANISLAUS TOWING & RECOVERY SERVICES,
INC., (a California Corporation), RON HANNINK and
STEPHANIE HANNINK

k:\docs\cases\55351021.8\pleadings\federal court\complaint.doc

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS and BREACH OF CONTRACT (DEMAND FOR JURY TRIAL)

# EXHIBIT A

# NON-EXCLUSIVE NON-CONSENSUAL TOWING SERVICE FRANCHISE AGREEMENT

This Agreement between the CITY OF MODESTO (CITY), a municipal corporation of the State of California, and STANISLAUS TOWING SERVICES (FRANCHISEE) is for Non-Exclusive Non-Consensual Franchise Towing Services commencing April 13, 2009.

WHEREAS, on April 22, 2008, CITY issued Request for Application No. 0708-10 (hereinafter RFA) for City Generated Non-Exclusive Non-Consensual Franchise Towing Services; and

WHEREAS, on April 22, 2008, FRANCHISEE accepted a complete application packet in response to the RFA; and

WHEREAS, on January 27, 2009, the City Manager presented his recommendation and report to the Modesto City Council; and

WHEREAS, on January 27, 2009, the Modesto City Council passed a resolution of intent to consider the applications, stating the character of the franchise, setting forth a notice of the day, hour and place when and where all persons may appear before Council and be heard thereon, and directing the City Clerk to publish said notice in the official newspaper at least once within ten (10) days after the passage of said resolution.

WHEREAS, on March 3, 2009, FRANCHISEE was granted a Non-Exclusive Franchise for City Generated Non-Consensual Towing Services; and

WHEREAS, FRANCHISEE filed written acceptance of said Non-Exclusive Franchise with the City Clerk; and

WHEREAS, FRANCHISEE represents that it is qualified, willing and able to provide non-consensual towing services and

NOW, THEREFORE, in consideration of this Agreement, and the mutual promises, covenants and stipulations hereinafter contained, the parties agree as follows:

## 1. SCOPE OF WORK

FRANCHISEE shall furnish all labor, materials, and equipment necessary to provide non-exclusive non-consensual towing services as specified in the Notice for Application, Request for Application No.0708-10, Non-Exclusive Non-Consensual Franchise Towing Services Verified Application, and all documents requested in response thereto, all of which are incorporated herein by this reference, and this Agreement (which collectively shall constitute the Non-Exclusive Non-Consensual Towing Service Franchise Agreement and which is referred to herein as "this Agreement"). All non-consensual towing services shall be furnished and performed in strict compliance with the terms and conditions of this Agreement. Non-Consensual towing services include, but are not limited to;

1

A. Towing of all vehicles impounded by the CITY for investigation, as evidence in a criminal case, asset forfeiture, and vehicles towed pursuant to the California Vehicle Code ("CVC") including, but not limited to, CVC Section 14607.6.

B. Towing of vehicles involved in accidents, and/or stalled vehicles obstructing traffic, and/or vehicles illegally parked, and/or vehicles whose driver is incapacitated or physically unable to drive the vehicle, and/or vehicles whose driver has been arrested and/or detained and cannot drive the vehicle, and/or vehicles under the 30-day impound authority including, but not limited to, CVC Section 14602.6, and/or vehicles with five (5) or more outstanding parking citations;

C. Towing of all vehicles necessitating special procedures to ascertain vehicle identification numbers, VIN tows, in compliance with the requirements of the CVC;

D. Towing of any abandoned vehicle, inoperative vehicle, or abated vehicle, from any street, alley, highway, or any other private or public property in the CITY pursuant to the Modesto Municipal Code ("MMC") and CVC including, but not limited to, MMC Section 3-2.1006 and CVC Section 22669 respectively;

E. Towing any other vehicle or vessel as may be ordered by any police officer, police employee, or any other employee or agent of the CITY who is properly authorized to order such tow. This shall include, but is not limited to, any vehicle that is submerged, either wholly or in part. This shall also include, but is not limited to, the removal and storage of any abandoned vessel from city streets/property, whether or not said vessel is attached to a trailer;

F. Towing trailers, boats, motor homes, etc.

## 2. **TERM OF AGREEMENT**

The initial term of this Agreement shall be for three (3) years, commencing April 13, 2009. The CITY reserves the right to extend this Agreement for two (2) additional, one-year terms, at the sole discretion of CITY. Either party may terminate this Agreement by giving the other party thirty (30) days written notice.

## 3. **PAYMENT/FRANCHISE FEES PAYABLE TO CITY**

A. FRANCHISEE agrees to pay to CITY a franchise fee in accordance with the terms of this Agreement.

B. Commencing with the start date and for the first year of this Agreement, the FRANCHISEE shall pay CITY a franchise fee of $40.00 for each and every non-consensual tow, as defined in this Agreement, performed by FRANCHISEE on behalf of or at the request of CITY.

C. Commencing with the second year of this Agreement (i.e. the 366th day from the start date), the FRANCHISEE shall pay CITY a franchise fee of $45.00 for each and every

non-consensual tow, as defined in this Agreement, performed by FRANCHISEE on behalf of or at the request of CITY.

D. Commencing with the third year of this Agreement (i.e. the 731st day from the start date) the FRANCHISEE shall pay CITY a franchise fee of $50.00 for each and every non-consensual tow, as defined in this Agreement, performed by FRANCHISEE on behalf of or at the request of CITY.

E. All franchise fees owed to CITY for each and every non-consensual tow performed by the FRANCHISEE shall be due and payable on a monthly basis as set forth in the invoice detailing the franchise fees owed. CITY shall receive payment no later than thirty (30) days proceeding each month as illustrated in Paragraph 3F. Payment shall be made in the form of a preprinted company bank check or cashier's check payable to the City of Modesto, P.O. Box 3313 Modesto, CA 95353, Attn: Tow Franchise Administrator (TFA).

F. CITY/TFA shall mail an itemized bill/invoice of the franchise fees owed by FRANCHISEE to CITY on or before the 10th of each month, for the preceding month's non-consensual tows. Payment on the invoice is due to the CITY by the 1st day of the following month. (e.g. FRANCHISE fees for the month of January will be invoiced and mailed by February 10th. Payment of the total amount invoiced shall be received by CITY no later than March 1st, everyday thereafter the invoice is delinquent.)

G. Payments shall not be made contingent on any payments due or payable to the FRANCHISEE by either CITY or the registered owner.

H. If any itemized bill/invoice is more than five (5) calendar days delinquent, the Chief of Police or his designee shall have the authority to immediately suspend the FRANCHISEE until payment of any and all billed/invoiced amounts are paid in full to CITY. Furthermore, if any itemized bill/invoice is more than sixty (60) calendar days delinquent, the Chief of Police or his designee shall have the authority to immediately terminate this Agreement.

## 4. SECURITY

FRANCHISEE shall present CITY with a cashiers check payable to, in favor of, and payable at the sight of the City of Modesto in the amount of Five Thousand Dollars and 00/100 as a Performance Security. The check shall be held by the CITY for the term of this Agreement in an interest bearing account. In the event that this Agreement is terminated, the performance security and any interest accrued thereon will be used to pay any outstanding amounts owed to CITY by the FRANCHISEE, any remaining balance shall be returned to the FRANCHISEE within thirty (30) calendar days of the termination.

## 5. INSURANCE

FRANCHISEE shall provide, at its own expense, and maintain at all times, the following insurance with insurance companies licensed in the State of California and shall provide evidence of such insurance to CITY as may be required by the City Clerk of CITY. The

3

policies or certificates thereof shall provide that, thirty (30) days prior to cancellation or provide that material change in the policy, notices of same shall be sent by registered mail to the Risk Manager of CITY, 1010 10th St. Modesto, Ca. 95353, return receipt requested, for all of the following stated insurance policies.

A. Workers' Compensation - in compliance with the statutes of the State of California, plus employer's liability with a minimum limit of liability of $1,000.000.

B. General Liability - insurance with a minimum limit of liability per occurrence of $1,000,000 for bodily injury, property damage, and bodily injury. This insurance shall indicate on the certificate of insurance the following coverages and indicate the policy aggregate limit applying to: premises and operations; broad form contractual; independent consultants and subcontractors; products and completed operations; and/or professional liability.

C. Automobile Liability insurance with a minimum limit of liability per occurrence of $1,000,000 for bodily injury, property damage, and personal injury. This insurance shall cover any automobile for bodily injury and property damage.

D. Commercial Business Automobile Liability - Bodily injury and property damage with a combined single limit of not less than One Million Dollars ($1,000,000) shall be maintained. These minimum standards are to include scheduled, non-owned, and hired auto coverage.

E. Uninsured Motorist - Legal minimum combined single limit.

F. On-Hook Coverage - Insuring the vehicle in tow with limits based on the size of the tow truck.

Class A tow truck - One Hundred Thousand Dollars ($100,000)

Class B tow truck - One Hundred Fifty Thousand Dollars (150,000)

Class C tow truck - Two Hundred Thousand Dollars ($200,000)

G. Garage Liability - Includes premises and operations. Coverage for bodily injury and property damage with a combined single limit of not less than One Million Dollars ($1,000,000).

H. Garage Keepers Liability - Shall be the same minimum as on-hook coverage for vehicles in the care, custody and control of the FRANCHISEE in the storage yard.

    i.     If at any time any of said policies shall be unsatisfactory to the CITY, as to form or substance or if a company issuing such policy shall be unsatisfactory to the CITY, the FRANCHISEE shall promptly obtain a new policy, submit the same to the Risk Manager for approval and submit a certificate thereof as hereinabove provided. Upon failure of the FRANCHISEE to furnish, deliver or maintain such insurance and certificates as above provided, this FRANCHISE, at the election of the CITY, may be forthwith declared suspended or terminated. Failure of the FRANCHISEE to obtain and/or maintain any required insurance shall not relieve the FRANCHISEE from any liability under this Agreement, nor shall the insurance requirements be construed to conflict with or otherwise limit the obligations of the FRANCHISEE concerning indemnification. The CITY, its agents, officers, employees, and volunteers shall be named as an additional

4

insured on all insurance policies required herein, except Workers' Compensation. The Workers' Compensation insurer shall agree to waive all rights of subrogation against the CITY, its agents, officers, employees, and volunteers for losses arising from work performed by FRANCHISEE for the CITY. The FRANCHISEE'S insurance policy (ies) shall include a provision that the coverage is primary as respects the CITY; shall include no special limitations to coverage provided to additional insured; and, shall be placed with insurer(s) with acceptable Best's rating of A: VII or with approval of the Risk Manager.

ii.      For any claims related to the work performed pursuant to this Agreement the FRANCHISEE'S insurance coverage shall be primary insurance as respects the Entity, its officers, officials, employees, and volunteers. Any insurance or self-insurance maintained by the Entity, its officers, officials, employees, or volunteers shall be excess of the FRANCHISEE'S insurance and shall not contribute with it

iii.      FRANCHISEE shall either require any subcontractor to procure and to maintain during the term of the subcontract all insurance in the amounts specified above, or shall insure the activities of subcontractors in the policy specified above. The limits of liability required may vary, depending on the type of permit or contract.

iv.      Proof of insurance shall be in the form of a certificate of insurance and separate endorsements naming the CITY as an additional insured for all insurances except Workers' Compensation. Policy expiration or cancellation will immediately nullify this Agreement. FRANCHISEE'S insurance policy shall provide for a thirty (30) day advance notice to CITY in the event the insurance policy will expire or be cancelled. FRANCHISEE shall also immediately notify the Tow Administrator in the event the insurance policy has expired or is cancelled. Failure to maintain insurance or to notify the CITY and Franchise Tow Administrator of insurance lapses shall constitute a material breach of this Agreement and CITY shall have the right to immediately suspend and/or terminate this Agreement as determined by the Chief of Police or his designee.

v.      The ultimate responsibility for any damage to any vehicle or property or the loss of any vehicle or any property contained in the vehicle while the vehicle and/or property is in the FRANCHISEE'S care and/or custody rests with the FRANCHISEE. The FRANCHISEE shall reimburse the vehicle or property owner for any loss or damage which has been identified in a Modesto Police Department Motor Vehicle Report or other official document and is not covered by FRANCHISEE'S insurance.

vi.      Any deductibles or self-insured retention must be declared to and approved by the City of Modesto Risk Manager.

## 6.  HOLD HARMLESS AGREEMENT

FRANCHISEE shall hold CITY, its agents, officers, employees, and volunteers, harmless from and save, defend and indemnify them against any and all claims, losses, liabilities and damages from every cause, including but not limited to, injury to person or property or wrongful death, with the indemnity to include reasonable attorney's fees, and all costs and expenses, arising directly or indirectly out of any act or omission of FRANCHISEE, whether or not the act or omission arises from the sole negligence or other liability of CITY, or its

5

agents, officers, employees, or volunteers relating to or during the performance of its obligations under this Agreement.

## 7. **PROHIBITION OF GIFTS**

A. FRANCHISEE shall be subject to CITY's prohibition against acceptance of any gift by a CITY officer or employee.

B. FRANCHISEE agrees not to offer any CITY officer or employee any gift. The offer or giving of any gift prohibited by CITY shall constitute, at a minimum, a **failure to provide adequate service** by FRANCHISEE. In addition to any other remedy(ies) CITY may have at law or equity, CITY may immediately terminate this Agreement for a violation of this Paragraph 7 notwithstanding any provision of this Agreement to the contrary.

## 8. **DRIVERS**

A.   FRANCHISEE shall, at a minimum, maintain the following information for each employee/driver providing services to CITY pursuant to this Agreement.

   i.     Full name

   ii.    Date of birth.

   iii.   Valid California Driver's License number and photocopy of said driver's license.

   iv.    Copy of Social Security Card

   v.     Job title-description.

   vi.    Current home address

   vii.   Current home phone number.

   viii.  Copy of employment application.

   ix.    Medical certificate (if applicable)

B.   It is the responsibility of FRANCHISEE to maintain a sufficient number of employees and/or properly licensed and permitted drivers to meet all the terms and conditions set forth in this Agreement. Any violation of CVC Section 12500 or 14601 through 14601.5, by a FRANCHISEE or FRANCHISEES employee/driver providing towing service for the CITY under the terms of this Agreement, may be grounds for immediate suspension of this Agreement, notwithstanding any provisions of this Agreement to the contrary, and at a minimum, shall be deemed **a failure to provide adequate service**.

C.   At the start of this Agreement, FRANCHISEE shall provide to the Tow Franchise Administrator a current list of its driver's who will be providing services under the terms of this Agreement. Any drivers hired thereafter that will provide services to CITY pursuant to the terms of this Agreement and/or any change in the employment status of

any driver including, but not limited to, suspension or dismissal from employment, shall be reported to the Franchise Tow Administrator within twenty-four (24) hours.

D.    FRANCHISEE and all tow truck drivers providing services to CITY pursuant to the terms of this Agreement shall be enrolled in the pull notice program with the Department of Motor Vehicles. FRANCHISEE shall enroll all newly hired tow truck drivers in the Pull Notice Program within fifteen (15) calendar days of hire.

E.    Any violation of 8A through 8D shall, at a minimum, be deemed a **failure to provide adequate service.**

## 9.    TOW DRIVERS PERMIT

A.    FRANCHISEE tow driver(s) shall apply for and obtain a Tow Driver Permit annually from the Modesto Police Department for each and every tow driver responding to a CITY generated tow.

A Tow Driver Permit fee will be charged for each permit applied for and shall be paid by the FRANCHISEE at the time of permit application. The fee will be established by resolution of the Modesto City Council, which may be amended from time to time.

B.    FRANCHISEE'S tow driver(s) shall carry a valid Modesto Police Department issued Tow Driver Permit with them at all times when responding to a CITY generated tow. Failure to obtain a Tow Driver Permit and/or failure to provide a valid Modesto Police Tow Driver Permit, upon request, at the scene of a CITY generated tow shall, at a minimum, be deemed a **failure to provide adequate service** and may at the discretion of the officer or agent on scene result in the tow being cancelled.

C.    A Tow Driver Permit application can be obtained from the Tow Franchise Administrator at the Modesto Police Department, 600 10th St., Modesto Ca., 95354. The Tow Driver Permit will be valid for one year from the date of issuance. It is the responsibility of the FRANCHISEE to ensure all drivers maintain a valid Tow Driver Permit.

D.    A Tow Driver Permit shall NOT be issued to any of the following persons:

    i.    Any person under the age of eighteen (18) years old;

    ii.    Any person who is currently required to register pursuant to Section 290 of the California Penal Code;

    iii.    Any person who has been convicted of a crime involving any misdemeanor or felony driving offense, any crime involving stolen or embezzled vehicles, fraud related to the towing business, stolen or embezzled property, crimes of violence, possession and/or sales of drugs or crimes of moral turpitude, unless a period of not less than five (5) years shall have elapsed since the date of conviction or the date of release from confinement for such offense, whichever is later;

    iv.    Any person who has been convicted of driving a vehicle recklessly within the two (2) years immediately preceding application for a permit;

    v.    Any person who has been convicted of driving a vehicle while under the influence of intoxicating liquors or drugs within the five (5) years immediately preceding application for a permit;

    vi.    Any person not possessing a valid class specific driver's license issued by the State of California

    vii.    Any person on current probation or parole.

E.    The requirement to currently possess a Tow Driver Permit shall be waived for a period of ninety (90) calendar days following the start date of this Agreement, to provide the CITY sufficient time to process all Tow Driver Permit applications. FRANCHISEE shall ensure all tow drivers apply for a Tow Driver Permit within ten (10) calendar days following the start date of this Agreement, failure to do so shall, at a minimum, be deemed a **failure to provide adequate service.**

F    Nothing herein shall prohibit the Chief of Police, or his designee from denying the issuance of, or imposing an immediate suspension and/or termination of, any Tow Drivers Permit when the applicants/permit holders conduct, in the opinion of the Chief of Police, or his designee, is considered to be a danger to the motoring public or who has engaged in conduct constituting a violation of this Agreement.

## 10. DEMEANOR AND CONDUCT

While providing towing services pursuant to this Agreement, the FRANCHISEE, its employee(s) and/or agents shall refrain from any act of misconduct including, but not limited to, any of the following:

A.    Rude or discourteous treatment of the public or CITY employees.

B.    Lack of service or refusal to provide service to the public or CITY employees.

C.    Any act of sexual harassment or sexual impropriety.

D.    Unsafe driving practices.

E.    Exhibiting any objective symptoms of alcohol and/or drug intoxication. FRANCHISEE/tow truck driver shall submit to a Preliminary Alcohol Screening Test upon demand of a peace officer.

F.    Appearing at the scene of a CITY-generated tow with the odor of an alcoholic beverage emitting from his/her breath or person. FRANCHISEE /tow truck driver shall submit to a Preliminary Alcohol Screening Test upon demand of a peace officer.

G.    Appearing at the scene of a CITY-generated tow without being attired in the FRANCHISEE'S established uniform. Such uniform shall be approved by and kept on file with the Tow Franchise Administrator prior to the start date of this Agreement. At a minimum, the name of the tow business and the name of the employee shall be clearly visible on the uniform shirt.

H.     Any violation of sections 10.A through 10.G shall, at a minimum, be deemed a **failure to provide adequate service**.

I.     **However, nothing herein shall prohibit the Chief of Police, or his designee, from imposing an immediate suspension and/or termination on any FRANCHISEE and/or employee(s) whose conduct, in the opinion of the Chief of Police, or his designee, is considered to be a danger to the motoring public or who has engaged in conduct constituting a gross violation of this Agreement**.

J.     All complaints received by the Modesto Police Department against the FRANCHISEE or its agent(s) or employee(s) will be accepted and investigated in a fair and impartial manner. At a minimum, any substantiated complaint will be deemed a **failure to provide adequate service**. Furthermore, as a result of the investigation, the Chief of Police or his designee may initiate such disciplinary action as he deems appropriate.

K.     FRANCHISEE must notify CITY of all contracts with other cities or governmental agencies to provide tow services within California. Any FRANCHISEE that is under contract with any other city or agency and who is either suspended or terminated by that city or agency shall notify in writing the CITY/ Tow Franchise Administrator within twenty-four (24) hours of such suspension or termination, failure to do so shall, at a minimum, be deemed a **failure to provide adequate service.**

## 11. FACILITIES

A.     FRANCHISEE shall maintain an office facility with a primary storage yard and interior storage within two (2) miles of the Modesto City limit.

B.     Hours of Operation:

   i.     The business office shall be open to the public, staffed and available for vehicle releases, storage, inquiries and all other business purposes during business hours. Business hours are defined as Monday through Friday, between the hours of 8:00 a.m. and 5:00 p.m., except the following observed holidays: New Years Day, Martin Luther King Jr. Day, Presidents Day, Memorial Day (observed), Independence Day, Labor Day, Veterans' Day (observed), Thanksgiving Day, Day after Thanksgiving and Christmas Day.

   ii.     In order to ensure that the vehicle owner or his/her agent may claim vehicles towed on behalf of the CITY at any time, on any day and to promptly release CITY towed vehicles, the FRANCHISEE must have an employee available after business hours, who can arrive at the primary office facility within thirty (30) minutes of a request by the CITY or a citizen. Vehicle owners or their agents who request entry to the storage facilities after business hours may be assessed an after-hour gate fee. CITY shall not be assessed an after-hour gate fee.

   iii.     Any violation of sections 11.A through 11.B.ii. shall at a minimum be deemed a **failure to provide adequate service.**

9

## 12. BUSINESS OFFICE

A.     FRANCHISEE shall have an accessible public restroom that complies with all federal, state and local laws and regulations and FRANCHISEE shall have a telephone available for customers to use.

B.     FRANCHISEE shall display the FRANCHISEE'S business name, address and telephone number at the primary business and secondary storage lot/facility location with a sign clearly visible day and night from the street.

C.     Shall be neat and clean in appearance.

D.     The following documents, printed in a minimum of 12-point type (unless otherwise stated or required by the California Vehicle Code) shall be posted by FRANCHISEE in the Primary business office in a conspicuous location clearly visible to the public

    i.     Complete Copy of this Agreement;

    ii.     Name and address of FRANCHISEES insurance broker carrying the insurance required pursuant to this Agreement;

    iii.     A notice explaining the procedure by which unclaimed vehicles are sold at public auction stating that all in attendance at such auction shall have an equal opportunity to bid. Notice shall include the locations of such auctions and publications in which such auctions are advertised.

    iv.     "Vehicle Impound Rights and Obligations" informing the public of their rights pursuant to CVC Section 22852.

    v.     A notice advising that complaints against FRANCHISEE related to CITY generated non-consensual tows can be made by contacting the Modesto Police Department, Tow Franchise Administrator, 600 10th St., Modesto Ca. 95354, (209) 572-9500. This notice shall be displayed in a conspicuous place clearly visible to the public in a minimum of 48- point type.

    vi.     Maximum Fee/Rate Schedule for CITY generated non-consensual tows. This notice shall be displayed in a conspicuous place clearly visible to the public in lettering not less than 1" in size.

    vii.     Any violation of 12A through 12D shall, at a minimum, be deemed a **failure to provide adequate service**.

## 13. STORAGE LOT

A.     FRANCHISEE'S lot(s) must have an improved surface (e.g., gravel, concrete, paved) and the storage lot(s) shall be free of litter, debris and weeds.

B.     The storage lot(s) must be adequately lit during hours of darkness.

C.   The storage lot(s) must comply with all applicable local, state and federal rules, regulations and laws.

D.   Stored vehicles shall be parked with a minimum of two (2) feet of clearance on each side and one (1) foot of clearance in the front and one foot of clearance in the rear.

E.   The storage lot(s)/facility(ies) shall have interior storage used exclusively for the storage of impounded/stored vehicles.

F.   Secondary storage locations may be utilized, however, neither customers nor CITY shall be charged any additional fees for vehicles stored at a secondary facilities. Secondary storage lots/facilities must be within two (2) miles of the Modesto City limit. In addition, all vehicles must be released to the registered owner or their agent at the primary business location. Both primary and secondary storage lots shall be enclosed by a solid wall or chain link fence at least six (6) feet in height for maximum security. Said wall or fence shall comply with all local, state and federal rules, ordinances, codes and regulations. Storage lots/facilities must be adequately lit during hours of darkness.

G.   All towed vehicles shall be stored on private property only. At no time shall a towed vehicle be deposited, placed, left standing or stored on a public roadway or right of way.

H.   A request for outside or inside storage on a CITY generated non-consensual tow by a customer shall be honored. If no request is made, the vehicle shall be stored in the least costly manner to the customer.

I.   It is the responsibility of the FRANCHISEE to determine and maintain a sufficient amount of storage to meet all the terms and conditions of this Agreement.

J.   Any violation of 13.A through 13.I shall, at a minimum, be deemed a **failure to provide adequate service.**

## 14. TRUCKS

A.   FRANCHISEE shall own or lease, and have in their possession a minimum of two (2) fully operational Tow Trucks, as defined in Section 615(a) of the California Vehicle Code, with a minimum GVWR of 14,000 pounds, a minimum of one (1) tow truck shall be capable of towing all vehicles with a (GVWR) up to and including 10,000 pounds. All tow trucks must be currently registered with the California Department of Motor Vehicles and must display a current Modesto Police Department inspection sticker.

B.   Tow Truck Classifications and Equipment Specifications:

   i.   To properly and safely tow and service the wide variety of vehicles being operated on the highway, a towing procedure may require the use of auxiliary equipment specifically designed for the purpose. This auxiliary equipment shall be used when appropriate.

   ii.  Tow truck equipment and specifications listed are the minimum acceptable. Auxiliary equipment will be required in each class.

11

iii.  Equipment Limitations: All towing equipment, recovery equipment, and carrier ratings are based on structural factors only. Actual towing, carrying, and recovery capacity may be limited by the capacity of the chassis and the optional equipment selected.

iv.  Towing Limitations:

The criteria to use in determining the safe towing limits for a tow truck are:

a.  The total weight of the tow truck, including the lifted load, must fall within the manufacturer's GVWR and not exceed either the Front or Rear Axle Weight Ratings (FAWR/RAWR).

b.  The tow truck must meet all applicable local, state and federal standards, regulations and laws.

c.  For proper steering and braking, the front axle load must be at least 50% of its normal or unladen weight after the load is lifted.

v.  Identification Label:
Each piece of towing equipment shall have a label or identification tag permanently affixed to the equipment in a prominent location to identify the manufacturer, serial number, model, and rate capacity.

vi.  Recovery Equipment Rating:
The basic performance rating of the recovery equipment is the weight the equipment can lift in a winching mode when the boom is static at a 30-degree elevation with the load lines vertical and the lifting cables sharing the load equally, measured with a live load (weight or load cell).

a.  The structural design of the recovery equipment must have a higher load capacity than the performance rating(s).

b.  Winches shall conform to or exceed the specifications set forth by the Society of Automotive Engineers (SAE) Handbook, SAE J706.

c.  All ratings for cable and chain assemblies are for the undamaged assembly condition. All cable and chain assemblies shall be the same type, construction, and rating as specified by the Original Equipment Manufacturer (OEM) for the equipment.

vii.  Safety Chains:
Safety chains shall be rated at no less than the rating specified by the OEM.

viii.  Control/Safety Labels:
All controls shall be clearly marked to indicate proper operation as well as any special warnings or cautions.

ix.  Wire Rope (Cable):
Wire rope shall be maintained in good condition. Only wire rope with swaged

12

ends with metal sleeves in the loops shall be approved for use on CITY generated tows. Wire rope is not in good condition when it is stranded, knotted, crushed, excessively rusty, kinked, badly worn, when there are two or more wires broken in lay length, or when there is other visible evidence of loss of strength.

x.   Class A – Light Duty:  For the purposes of this Agreement, a Class A tow truck is defined as a tow truck that has a manufacturer's GVWR of at least 14,000 pounds.

xi.   Class B – Medium Duty:  For the purposes of this Agreement, a Class B tow truck is defined as a tow truck with a GVWR of at least 26,001 pounds.  The tow truck shall be equipped with air brakes and a tractor protection valve or device, and be capable of providing and maintaining continuous air to the towed vehicle.

xii.   Class C- Heavy Duty:  For the purposes of this Agreement, a Class C tow truck is defined as a tow truck with a GVWR of at least 48,000 pounds.  The tow truck shall be equipped with air brakes and a tractor protection valve or device, and be capable of providing and maintaining continuous air to the towed vehicle.

C.   All tow trucks utilized by FRANCHISEE to provide CITY generated non-consensual tow services shall be inspected annually by the Modesto Police Department. A tow truck inspection fee will be established by resolution of the Modesto City Council and may be amended from time to time.  Tow truck inspection fees shall be paid by the FRANCHISEE at the time of inspection.  Only inspections approved by the Franchise Tow Administrator and conducted by authorized personnel of the CITY will be accepted.

D.   An inspection sticker will be issued by the Modesto Police Department Franchise Tow Administrator for each tow truck once the tow truck has passed inspection. FRANCHISEE shall place the inspection sticker on the exterior windshield, upper left hand corner. Failure to display a valid inspection sticker shall, at a minimum, be deemed a **failure to provide adequate service** and may at the discretion of the officer or agent on scene result in the tow being cancelled.  Storage lots/facilities will also receive a bi-annual inspection by the Modesto Police Department at no additional cost to the FRANCHISEE.

E.   In the event the FRANCHISEES tow truck fails its initial or annual inspection, a reinspection of the FRANCHISEES tow truck, that failed inspection, must be conducted within thirty (30) calendar days.  A reinspection fee, established by resolution of the Modesto City Council, shall be paid by the FRANCHISEE at the time of reinspection.

F.   All tow trucks shall maintain a broom, shovel, reflective triangles, fire extinguisher and a covered container with a minimum of 5 gallons of absorbent at all times.

G.   FRANCHISEE hereby allows the Modesto Police Department to inspect any and all storage lots/facilities, used to store CITY generated tows, business office(s), and all equipment owned by FRANCHISEE at any time and for any reason, with or without notice.  FRANCHISEE shall not utilize a tow truck on a CITY generated tow that has not been inspected and issued a valid inspection sticker by the Modesto Police Department.

H.     Display of the tow truck inspection sticker shall be waived for up to 90 days after award to allow Modesto Police Department sufficient time to conduct tow truck inspections. FRANCHISEE will be notified by the Tow Franchise Administrator of the date and time of its scheduled tow truck inspections at least five (5) calendar days prior to the inspection date.

I.     All tow trucks shall be clearly marked with the FRANCHISEE'S business name, address and telephone number on all doors.

J.     FRANCHISEE shall not display any sign or engage in any advertisement indicating an official connection with the CITY or the Modesto Police Department; (e.g., "Official Modesto Police Tow," "Approved by MPD," etc.). This will not preclude the Chief of Police, or his designee, from implementing a system of marking and/or identifying particular tow trucks as having passed a Modesto Police Department inspection or as being certified as a FRANCHISEE for CITY generated tows.

K.     Towed vehicles shall be loaded, secured and transported in compliance with this Agreement and all applicable local, state and federal rules, regulations and laws. Any violation of local, state or federal rules, regulations or laws, including, but not limited to a violation of the GVWR, safe loading requirements or a violation of the equipment requirements shall, at a minimum, be deemed a **failure to provide adequate service**.

L.     It is the responsibility of the FRANCHISEE to provide a sufficient number of tow trucks to meet all the terms and conditions of this Agreement. The number of tow trucks listed in this Agreement is a minimum. It is the FRANCHISEES responsibility to determine the number and type of tow trucks required to fulfill all the requirements of this Agreement.

M.     Any violation of 14A through 14L shall, at a minimum, be deemed a **failure to provide adequate service.**

N.     Any violation of the gross vehicle weight rating (GVWR) and/or safe loading requirements of a tow truck may be cause for immediate suspension, notwithstanding any provision of this Agreement to the contrary, and shall, at a minimum, be deemed a **failure to provide adequate service**. This includes but is not limited to, exceeding the tow truck's GVWR, front axle weight rating, rear axle weight rating, maximum tire weight ratings, not maintaining 50 percent of the tow trucks unladed front axle weight on the front of the axle or any violation of the CVC including, but not limited, to CVC Section 29004 CVC.

## 15. TOWING AND STORAGE CHARGES

A.     The following schedule reflects the maximum rates established for services or materials in connection with any vehicle towed pursuant to a CITY generated non-consensual tow which includes but is not limited to the following.

     i.     Towing of all vehicles impounded by the CITY for investigation, as evidence in a criminal case, asset forfeiture or vehicles towed under the CVC including, but not limited to, CVC Section 14607.6 (vehicle forfeiture);

   ii.   Towing of vehicles involved in accidents, and/or stalled vehicles obstructing traffic, and/or vehicles illegally parked, and/or vehicles whose driver is incapacitated or physically unable to drive the vehicle, and/or vehicles whose driver has been arrested and/or detained and cannot drive the vehicle, and/or vehicles under the 30-day impound authority including, but not limited to, CVC Section 14602.6, and/or vehicles with five (5) or more outstanding parking citations;

   iii.   Towing of all vehicles necessitating special procedures to ascertain vehicle identification numbers, VIN tows, in compliance with requirements of the CVC;

   iv.   Towing of any abandoned vehicle, inoperative vehicle, or abated vehicle, from any street, alley, highway, or any other private or public property in the CITY pursuant to the MMC and CVC including, but not limited, to MMC 3-2.1006 or CVC 22669 respectively;

   v.   Towing any other vehicle or vessel as may be ordered by any police officer, police employee, or any other employee or agent of the CITY who is properly authorized to order such tow. This shall include, but is not limited to, any vehicle that is submerged, either wholly or in part. This shall also include, but is not be limited to, the removal and storage of any abandoned vessel from city streets/property, whether or not said vessel is attached to a trailer.

   vi.   Towing trailers, boats, motor homes, etc

## B. MAXIMUM CHARGES

Time expanded on a CITY generated tow shall be charged at a rate not to exceed the rates set forth hereinafter. There shall be no additional charge(s) for towing after 5 p.m., weekend tows, holiday tows, use of a dolly or any other equipment, mileage and labor, which includes, but is not limited to, crane charges, winching and recovery from areas not accessible to the tow truck. FRANCHISEE shall collect all towing and storage charges from the vehicle owner unless otherwise stated in this Agreement.

Tow Fees

Year 1
Class A tow (GVWR – 14,000 pounds)  $160.00
Class B tow (GVWR – 26,001 pounds)  $225.00
Class C tow (GVWR – 48,000 pounds)  $250.00

Year 2 (366th day)
Class A tow (GVWR – 14,000 pounds)  $170.00
Class B tow (GVWR – 26,001 pounds)  $250.00
Class C tow (GVWR – 48,000 pounds)  $275.00

Year 3 (731st day)
Class A tow (GVWR – 14,000 pounds)  $180.00

15

Class B tow (GVWR – 26,001 pounds)    $275.00
Class C tow (GVWR – 48,000 pounds)    $300.00

In the event that CITY exercises its right to extend the term of this Agreement pursuant to Paragraph 2, Term of Agreement, the maximum amount allowed for towing shall be:

Year 4
Class A tow (GVWR – 14,000 pounds)    $190.00
Class B tow (GVWR – 26,001 pounds)    $300.00
Class C tow (GVWR – 48,000 pounds)    $325.00

Year 5
Class A tow (GVWR – 14,000 pounds)    $200.00
Class B tow (GVWR – 26,001 pounds)    $325.00
Class C tow (GVWR – 48,000 pounds)    $350.00

Additional Charge for 2nd tow truck required for removal of a vehicle. (Must have direct approval by MPD officer on scene and must be itemized on the invoice.) $75.00

Storage fees:

Year 1
Outside Daily Storage Fee ............................. $30.00
Inside Daily Storage Fee............................... $35.00
Class B/C Storage Fee............................ ....... $40.00

Year 2 (366th day)
Outside Daily Storage Fee............................. $32.00
Inside Daily Storage Fee............................... $37.00
Class B/C Storage Fee................................. $42.00

Year 3 (731st day)
Outside Daily Storage Fee............................. $34.00
Inside Daily Storage Fee............................... $39.00
Class B/C Storage Fee................................. $44.00

After business hours gate fee.......................... $50.00

In the event that the CITY exercises its right to extend the term of this Agreement pursuant to Paragraph 2, Term of Agreement, the maximum amount allowed for storage fees shall be:

**Year 4**
Outside Daily Storage Fee............................. $35.00
Inside Daily Storage Fee............................... $40.00
Class B/C Storage Fee................................. $45.00

16

**Year 5**

| | |
|---|---|
| Outside Daily Storage Fee | $36.00 |
| Inside Daily Storage Fee | $41.00 |
| Class B/C Storage Fee | $46.00 |

After business hours gate fee............................ $50.00

The above rates represent the maximum a FRANCHISEE may charge on a CITY generated non-consensual tow. A FRANCHISEE is not precluded from charging less when deemed appropriate. No FRANCHISEE, or their employee or agent, shall refer to any rate as the minimum required or set by CITY.

C.  Time expended in excess of sixty (60) minutes on-scene may be charged in one-minute increments at a rate of $90.00 per hour and shall be properly documented on the FRANCHISEE'S invoice. These additional-service fees may be charged only under the following conditions or circumstances:

  i.  When directed to "stand-by" by an authorized CITY employee or agent. "Stand-by" fees shall be billed to the Modesto Police Department on a separate invoice and shall include the name of the CITY employee or agent who authorized the charge and the Modesto Police Department case number.

  ii.  Necessary accident and/or recovery operations and when directed and approved by an authorized CITY employee or agent. This fee is the responsibility of the registered owner and shall be listed on the invoice with the name of the CITY employee or agent authorizing this charge

D.  The schedule of rates charged by FRANCHISEE shall be available in the tow truck, and shall be presented upon demand to the person(s) for whom the non-consensual tow services were provided or his/her agent at the scene.

E.  Vehicles stored twenty-four (24) hours or less shall be charged for no more than one-day storage. Each day of storage thereafter shall be calculated by calendar day (Civil Code Section 3068.1).

F.  If a request for a non-consensual tow is cancelled by the CITY or vehicle's owner/agent prior to the FRANCHISEE taking possession of the vehicle, there shall be no charge to the CITY or to the vehicle owner by the FRANCHISEE

G.  FRANCHISEE may charge a fee for lien sale preparations in compliance with California Vehicle Code Section 22851.12. All lien preparations and/or sales performed by FRANCHISEE shall be done in strict compliance with all applicable laws. All forms shall be accurate and complete.

H.  Notwithstanding any other provision of this Agreement to the contrary, any violations of sections 15.A. through 15.G shall, at a minimum, be deemed a **failure to provide adequate service** and a material breach of this Agreement, and shall constitute grounds for immediate termination of this Agreement.

17

I.  FRANCHISEE shall furnish a fully itemized billing to the vehicle owner or agent at the time of payment and/or upon request of the vehicle owner or agent. Failure to do so shall, at a minimum, be deemed a **failure to provide adequate service.**

J.  FRANCHISEE shall accept a valid bank credit card or cash for payment of towing and/or storage by the registered owner, legal owner or the owner's agent claiming the vehicle (CVC Section 22651.1). Appropriate credit card equipment shall be located at the primary business location and available for immediate processing from each tow truck. Failure to do so shall, at a minimum, be deemed a **failure to provide adequate service**

K.  A record of all vehicles towed by FRANCHISEE under this Agreement shall be retained by the FRANCHISEE and shall be readily available for immediate inspection and/or transcription or copying at the primary business location of the FRANCHISEE for a minimum of three (3) years. Failure to retain and provide complete and accurate records upon request of the CITY shall, at a minimum, be deemed **a failure to provide adequate service**. All records shall contain the following information

    i.    Date and time vehicle towed

    ii.   Modesto Police Department Case Number

    iii.  License Plate/Vehicle Identification Number

    iv.   Date and time of vehicle release

    v.    Year, Make and Model of Vehicle

    vi.   Copy of Modesto Police Dept Vehicle Release (if applicable)

    vii.  Date Lien Filed (if applicable)

    viii. Date Lien Sale (if applicable)

    ix.   All Lien Documents (if applicable)

    x.    All DMV paperwork (if applicable)

L.  FRANCHISEE shall post the Modesto Police Department case number on the windshield of any and all vehicles towed and stored by CITY. Failure to do so shall at a minimum be deemed a **failure to provide adequate service.**

M.  A trailer with a vessel as a load (e.g. boat, motorcycle, jet ski,) shall be considered one vehicle for the purposes of the maximum rate allowed for tow and storage.

N.  Any violation of 15A through 15M shall at a minimum be deemed **a failure to provide adequate service**.

18

## 16. RESPONSE / RESPONSE TIMES

A.  FRANCHISEE shall respond to a dispatch order for a CITY generated tow and be on-scene within thirty (30) minutes of the time of dispatch by a Stanislaus Regional 911 dispatcher, a police officer, a community service officer, employee, agent, or other officer of the CITY who has been duly authorized to request tow services. The dispatcher shall record the time of dispatch into the incident history. The dispatchers' computer entry record shall be the official time piece for the time of dispatch. If the tow truck arrives on scene after the thirty (30) minute requirement, the dispatcher or the officer on scene shall log the time of arrival into the incident history. The officers or dispatchers' computer entry record shall be the official time piece for the time of arrival of the tow truck.

Failure of the FRANCHISEE to respond to a call and furnish a tow truck capable of towing the vehicle at the designated point of the tow within thirty (30) minutes shall, at a minimum, be deemed a **failure to provide adequate service.**

**Exception:** Tows requested off the Over Weight Vehicle List shall respond to a dispatch order and be on scene within forty-five (45) minutes of the time of dispatch by a Stanislaus Regional 911 dispatcher, a police officer, community service officer, employee, agent, or other officer of the CITY who has been duly authorized to request such tow services. Failure of the FRANCHISEE to respond to a tow request from the Over Weight Vehicle List and furnish a tow truck capable of towing the vehicle at the designated point of tow within forty five (45) minutes shall, at a minimum, be deemed a **failure to provide adequate service.**

B.  Any officer or CITY employee may at his/her discretion cancel a tow that has not arrived on scene within the required time.

C.  FRANCHISEE shall maintain a phone line dedicated to Stanislaus Regional 911. Said phone line will be staffed twenty-four (24) hours a day, seven (7) days a week, including weekends and holidays. FRANCHISEES failure to answer the dedicated phone line will be deemed a **failure to provide adequate service**.

D.  FRANCHISEES failure to respond to a call for service by the CITY for any reason shall be deemed a **failure to provide adequate service**.

## 17. ROTATION TOW LIST

A.  The CITY will make a good faith effort to provide an even distribution of work among the FRANCHISEES. A list shall be established for non-consensual towing of all vehicles with a GVWR of 10,000 pounds or less. FRANCHISEE agrees to the rotation system established by CITY.

B.  A separate list (Over Weight Vehicle List) will be established for non-consensual towing of vehicles with a GVWR of 10,001 pounds or more. FRANCHISEES who own or lease a tow truck with a minimum GVWR of 26,001 pounds may be placed on the Over Weight Vehicle List on a voluntary basis. However, once placed on the Over Weight

Vehicle List FRANCHISEE shall give thirty (30) calendar days written notice to the Franchise Tow Administrator in order to be removed from the Over Weight Vehicle List.

C.  This Agreement applies to non-consensual towing as defined in this Agreement. Nothing contained herein shall be construed to regulate consensual tows.

D.  CITY reserves the right to request any tow company, regardless of its position on the rotation tow list.

## 18. AUDITING OF CHARGES AND SERVICES

A.  The CITY reserves the right to audit all records, charges, and/or services provided by FRANCHISEE pursuant to this Agreement. CITY's duly authorized representative shall have access to and the right to examine, transcribe, and/or copy, during business hours, as defined in Section 11 B.i., any and all reports, records, documents, files and personnel necessary to audit and verify charges and services provided by FRANCHISEE. A complete record of all vehicles towed by FRANCHISEE pursuant to this Agreement including, but not limited to; date and time of tow, Modesto Police Department case number, license plate number, vehicle identification number, date and time of release, year, make and model of vehicle, copy of Modesto Police Department vehicle release (if applicable), all completed lien and sale documents(if applicable) and vehicle disposition shall be readily available for inspection at the primary business location of the FRANCHISEE and provided to CITY immediately upon request, and shall be retained for a minimum of three (3) years.

## 19. RESPONSIBILITY

A.  FRANCHISEE shall be responsible for the protection of all CITY generated towed and/or stored vehicles in its possession until the vehicle has been released to its owner, or disposed of through the legal process, and shall be responsible for safeguarding all articles or property left in the towed and/or stored vehicle.

B.  FRANCHISEE shall release personal property from a towed/stored vehicle at the request of the vehicle owner or his/her agent, accept under the below listed exceptions. (Personal property is considered to be items, which are not affixed to the vehicle; i.e. papers, cell phones, pull out stereos, clothes, luggage, tools, cargo, etc.)  EXCEPTION: No personal property shall be released from vehicles impounded by CITY for evidence, investigation, asset forfeiture or vehicle forfeiture without prior authorization from the towing officer or the Tow Franchise Administrator.

C.  Any vehicle towed by the Modesto Police Department for evidence, investigation, asset forfeiture and vehicle forfeiture (CVC Section 14607.6) and stored by the FRANCHISEE shall be stored at the primary storage facility and shall not be moved until authorized by the Chief of Police, the Tow Franchise Administrator or their designee. The need for inside storage shall be indicated on the tow sheet. Vehicles towed by the Modesto Police Department for evidence, investigation, asset forfeiture and vehicle forfeiture (CVC Section 14607.6) shall not be lien sold until such time as the Modesto Police Department Tow Franchise Administrator provides the FRANCHISEE with a written release of the vehicle.

D.    FRANCHISEE shall not release any vehicle that is marked as an "Agency Hold" on the Vehicle Report without a signed Modesto Police Department Vehicle Release form.

E.    FRANCHISEE shall ensure that all debris and fluids are cleared from the scene of a CITY generated tow prior to leaving the scene.

F.    Any violation of sections 19.A thru 19.E shall, at a minimum, be deemed a **failure to provide adequate service**.

## 20. COMPLIANCE WITH THE LAW

A.    FRANCHISEE and its tow truck driver(s) and employees must be in compliance with all terms and conditions of this Agreement and all applicable federal, state, and local laws, rules, and regulations which are in force or become effective during the franchise period which, in any manner, affect towing and storage of vehicles, including, without limitation, the requirement that any person who drives a tow truck for FRANCHISEE is properly licensed and permitted and that all tow trucks meet any and all applicable Vehicle Code requirements.

B.    In the event that FRANCHISEE or any agent or employee of FRANCHISEE is cited, arrested and/or charged with any misdemeanor or felony driving offense, any crime involving stolen or embezzled vehicles, fraud related to the towing business, stolen or embezzled property, crimes of violence, driving while under the influence of alcohol and/or drugs, possession and/or sales of drugs or crimes of moral turpitude, FRANCHISEE may be immediately suspended or terminated at the discretion of the Chief of Police and/or FRANCHISEE's employee or agents Tow Driver Permit may be immediately suspended or revoked, notwithstanding any provision of this Agreement to the contrary. FRANCHISEE shall notify the Tow Administrator within seventy-two 72 hours of any citation or arrest of the FRANCHISEE or any known citation or arrest of any agent or employee of the FRANCHISEE.

C.    Any conviction of FRANCHISEE or any agent or employee of FRANCHISEE for any misdemeanor or felony driving offense, any crime involving stolen or embezzled vehicles, fraud related to the towing business, stolen or embezzled property, crimes of violence, driving while under the influence of alcohol and/or drugs, possession and/or sales of drugs or crimes of moral turpitude, notwithstanding any provision of this Agreement to the contrary, shall be grounds for immediate suspension or termination of this Agreement, at the discretion of the Chief of Police. FRANCHISEE shall notify the Tow Administrator within seventy-two (72) hours of any conviction of FRANCHISEE or any known conviction of an agent or employee of FRANCHISEE

D.    Any violation of 20A thru 20C shall, at a minimum, be deemed a **failure to provide adequate service.**

## 21.   FAILURE TO PROVIDE ADEQUATE SERVICE/DISCIPLINARY ACTION

A.    FRANCHISEE'S failure to meet **any** of the terms and conditions of this Agreement shall, at a minimum, be deemed a failure to provide adequate service. Any failure to provide

adequate service is a **violation** of the terms of this Agreement and shall result in the following disciplinary action unless otherwise stated in this Agreement:

    i.    First violation within any rolling twelve (12) month period, Written Notice via certified mail

    ii.    Second violation within any rolling twelve (12) month period, Written Warning via certified mail.

    iii.    Third violation within any rolling twelve (12) month period, thirty (30) Day Suspension.

    iv.    Upon reinstatement following a suspension a new rolling twelve (12) month period will begin for the FRANCHISEE.

    v.    Any two suspensions within any rolling three (3) year period shall result in termination of this Agreement.

B.    **Nothing herein shall be deemed to prohibit the Chief of Police, or his designee, from imposing an immediate suspension and/or termination on any FRANCHISEE and/or employee(s) whose conduct, in the opinion of the Chief of Police, or his designee, is considered to be a danger to the motoring public or who has engaged in conduct constituting a gross violation of this Agreement.**

## 22. EXPERIENCE/SALE OR TRANSFER OF BUSINESS

A.    FRANCHISEE must have owned a towing business in the State of California for a minimum of two (2) years immediately preceding the date of its application for a non-exclusive non-consensual towing service franchise.

B.    FRANCHISEE agrees that sale or transfer of the controlling interest in FRANCHISEES tow company shall immediately terminate this Agreement.

## 23. REVIEW/APPEAL OF VIOLATION

A.    FRANCHISEE may request a review of a **violation** within seven (7) calendar days of receipt of the notice of violation by submitting a request in writing to the Administrative Services Sergeant. If a review is requested by FRANCHISEE, it shall be done as soon as practicable by the Administrative Services Sergeant or his/her designee. FRANCHISEE shall be notified in writing of the Administrative Services Sergeants decision(s) within ten (10) business days of the date of completion of the review.

B.    Following a review, FRANCHISEE may appeal the Administrative Services Sergeants decision(s) by submitting a request in writing to the Chief of Police within seven (7) calendar days of receipt of the decision. If an appeal is requested, it shall be done as soon as practicable. The appeal shall be conducted by the Chief of Police or his/her designee. FRANCHISEE shall be notified in writing of the decision(s) of the Chief of Police within ten (10) business days of the date of the completion of the appeal. **The decision of the Chief of Police is final.**

C. A suspension or termination resulting from a violation shall not be imposed until the review and/or appeal process for that violation has been exhausted, except where this Agreement permits an immediate suspension or termination or where a FRANCHISEE'S conduct is deemed to be a danger to the motoring public or who has engaged in conduct constituting a gross violation of this Agreement. Failure to request a review or appeal in writing within the time specified or failure of FRANCHISEE to appear at a scheduled review or appeal hearing shall constitute a waiver of his or her right to a review or appeal and adjudication of the violation and/or disciplinary action and the violation and/or disciplinary action shall become final.

## 24. MOTOR CARRIER PERMIT/OTHER PERMITS AND LICENSES

A. FRANCHISEE must possess a current/valid Department of Motor Vehicles Motor Carrier Permit. Failure to do so shall be grounds for immediate suspension and/or termination of this Agreement.

B. FRANCHISEE and his/her officers, officials, employees and agents shall obtain and maintain during the term of this Agreement all necessary licenses, permits and certificates required by law for the conduct of FRANCHISEE'S activities and for the provision of services hereunder, including a business license issued by the City of Modesto.

## 25. ENTIRE AGREEMENT.

This Agreement constitutes the entire understanding among the parties with regard to the matters herein. The terms of this Agreement are contractual and not a mere recital. There have been no representations, promises, or inducements of any kind made by any party other than those that appear as signatories hereto. Each covenant and condition mentioned in this Agreement is material consideration for each party to enter into this Agreement.

## 26. PARTIES TO AGREEMENT. This Agreement is intended to confer rights and benefits only on the signatories hereto and is not intended to confer any right or benefit upon any other person or entity. No person or entity other than the signatories hereto shall have any legally enforceable right under this Agreement. All rights of action of any breach of this Agreement are hereby reserved to the signatories hereto.

## 27. VOLUNTARY AND KNOWING AGREEMENT. Each of the parties hereto states that this Agreement voluntarily and with knowledge of its significance and legal effect.

## 28. AUTHORITY AND COMPETENCY. Each party hereto expressly warrants and represents that the person executing this Agreement on its behalf is legally competent to and is authorized to enter into this Agreement and to bind said party to their representations, terms, conditions, and covenants as set forth herein.

## 29. BINDING EFFECT. This Agreement shall be binding upon and shall insure to the benefit of the signatories and their respective heirs, executors, administrators, trustors, trustees, beneficiaries, predecessors, successors, affiliated and related entities, officers, directors, principals, agents, employees, assigns, representatives, and all persons, firms, associations,

23

and/or corporations connected with them including, with limitation, their insurers, insureties, including and/or attorneys.

30. **SEVERABILITY.** If any provision or any part of any provision of this Agreement is for any reason held to be invalid, unenforceable, or contrary to any public policy, law, stature and/or ordinance, the remainder of this Agreement shall not be affected thereby and shall remain valid and fully enforceable.

31. **ASSIGNMENTS.** The TOWING CARRIER shall not assign, subcontract or transfer by operation of law any obligation hereunder without prior written consent of the CITY.

32. **INDEPENDENT CONTRACTOR.** The TOWING CARRIER is and shall at all times remain as to the CITY a wholly independent contractor. Neither the CITY nor any of its officers, employees nor agents shall have control over the conduct of the TOWING CARRIER nor any of the TOWING CARRIER'S officers, employees nor agents, except as herein set forth. The TOWING CARRIER shall not at any time or in any manner represent that it or any of its officers, employees or agents are in any manner officers or agents of the CITY.

33. **NOTICE** This Agreement may be terminated by either party, without prejudice, upon thirty (30) days written notice to the other party. Any notice to be given pursuant to this Agreement by either party to the other shall be deposited with the United States Postal Service, postage prepaid.

IN WITNESS WHEROF, the City of Modesto, A municipal corporation has authorized the

execution of this agreement in duplicate by its City Manager and attestation by its City Clerk

under authority of Resolution No. 2009-145, adopted by the Council of the City of Modesto on

the 7th day of April, 2009, and Ronald Hannink and Stephanie Hannink have caused this

document to be duly executed.

CITY OF MODESTO, a municipal corporation

By _____
      GREG NYHOFF, City Manager

By _____

ATTEST:

By _____
             (Seal)

By _____
      STEPHANIE LOPEZ, City Clerk

Consultants Federal ID #_____

By _____
      SUSANA ALCALA WOOD, City Attorney

APPROVED AS TO RISK MANAGEMENT:

By _____
      MARY AKIN, Risk Manager

*\* Corporations- signature of (2) officers required or one (1) officer plus corporate seal.*
  *Partnership- signature or a partner required*
  *Sole Proprietorship- signature of proprietor required*

# EXHIBIT B

# CLAIM FOR MONEY OR DAMAGES

RECEIVED
MODESTO CITY CLERK

**TO:**   **CITY CLERK**
   **CITY OF MODESTO**
   **PO Box 642**
   **Modesto, CA 95353**
   **(209) 577-5446**

**WARNING**
Be sure your claim is filed with the
City Clerk no later than 6 months
after date of the incident. (see Govern-
ment Code Section 910 et seq)

11 APR -1  PM 3: 37

1.  Name of Claimant:   Ronald Hannink, Stephanie Hannink, and Stanislaus Towing & Recovery Services
2.  Address:   (Street)  1307 Angie Avenue
       (City)   Modesto          (State) CA          (Zip Code) 95351
3.  Claimant's Telephone  (Home)  209-595-7700   (Work) 209-541-1234   (Other) _____
4.  Notices to be sent to: (if other than to above address)
    a. Name:  Charles K. Brunn, Esq.          Relation to Claimant:  Attorney
    b. Address  (Street)  928 12th Street, Suite 200
       (City)  Modesto          (State)  CA          (Zip Code)  95354
    c. Telephone: (Home)  209-521-2133     (Work) _____     (Other) _____
5.  Provide information in detail regarding the claim:
    a. What damages and/or injury did you suffer - describe in detail:
       Breach of Franchise Tow Service Agreement
    b. Date  approx. 2/22/11      Time _____   Location _____

    c. How did damage and/or injury occur:  The City, through Modesto Police Department, breached
       its agreement with Claimants
    d. State why you believe City is responsible or involved:  Termination was conducted by Sgt.
       Applegate of the Modesto Police Department
    e. Identify City employee(s) causing damage or injury:  Karen Robertson, CSO of the Modesto Police
       Department and Sgt. Rich Applegate
    f. Amounts claimed (personal injury): $ 1.5 Million          (property damage)  $_____
    (Attach supporting medical bills, invoices, repair estimates, etc)
6.  a. If your claim does not exceed $10,000 state the total amount claimed:  n/a
    b. If your claim exceeds $10,000 indicate whether your claim would be a limited civil case (if the
    amount claimed does not exceed $25,000 it is treated as a limited civil case):
    n/a                         The total claim does not exceed $25,000
    XX                          The total claim exceeds $25,000
7.  List names, addresses, phone number of any witness:  n/a

8.  List names, address, hospital, clinics, physicians:  n/a

9.  List your insurance company, name address and payments made if any:  n/a


**Note:    Presentation of a false claim is unlawful (Cal Penal Code Sec 72)**

03/05                                         Signature of Claimant or Representative