1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**
9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11
STANISLAUS TOWING &                    CASE NO. CV F 11-1344 LJO DLB
12 RECOVERY SERVICES, INC.,
et al.,                                **SUMMARY ADJUDICATION DECISION**
13                                      (Doc. 26.)
                      Plaintiffs,
14        vs.
15 CITY OF MODESTO, et al.,
16                    Defendants.
17 _____/
18                         **INTRODUCTION**

19        Plaintiffs[1] seek summary adjudication that defendant City of Modesto ("City") impermissibly

20 terminated and breached a towing services agreement in the absence of plaintiffs' crime of fraud to

21 invoke the agreement's termination provision.  The City responds that it satisfied the agreement's

22 termination provision and that factual issues exist whether plaintiffs were charged with misdemeanor

23 fraud.  This Court considered plaintiffs' summary adjudication motion on the record[2] and VACATES

24 _____

25        [1]        Plaintiffs are Stanislaus Towing & Recovery Services, Inc. ("Stanislaus Towing") and its owners and
   operators Ron Hannink ("Mr. Hannink") and Stephanie Hannink ("Ms. Hannink").  Stanislaus Towing and Mr. and Ms.
26 Hannink will be referred to collectively as "plaintiffs."

27        [2]        This Court carefully reviewed and considered the record, including all evidence, arguments, points and
   authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed
28 by the parties.  Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the

                                            1

1  the May 29, 2012 hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court

2  DENIES plaintiffs summary adjudication in their favor.

3                                          **BACKGROUND**

4                          **Towing Agreement And Its Fraud Provision**

5        The City and Stanislaus Towing entered into an April 13, 2009 Non-Exclusive Non-Consensual

6  Towing Service Franchise Agreement ("towing agreement").  The towing agreement addressed the

7  City's retention of Stanislaus Towing to provide towing services on rotation with other towing providers.

8        Defendant Karen Robertson ("Officer Robertson") is a City community service officer/tow

9  administrator and participated in preparation of the towing agreement.[3]  In her declaration, Officer

10  Robertson describes the "contracting process" as a series of six to eight meetings over a year with towing

11  providers "who worked with the City of Modesto in order to prepare the towing services agreement,

12  including the provisions contained in it. . . . All tow providers agreed to the final contract."

13        The towing agreement included a compliance with law provision ("fraud provision") which

14  permitted the City to terminate that towing agreement if plaintiffs were cited or charged with "fraud

15  related to the towing business."  The fraud provision provides in pertinent part:

16        In the event that FRANCHISEE [Stanislaus Towing] or any agent or employee of
          FRANCHISEE is cited, arrested and/or charged with any misdemeanor or felony driving
17        offense, any crime involving stolen or embezzled vehicles, **fraud related to the towing
          business**, stolen or embezzled property, crimes of violence, driving while under the
18        influence of alcohol and/or drugs, possession and/or sales of drugs or **crimes of moral
          turpitude**, FRANCHISEE may be immediately suspended or terminated at the discretion
19        of the Chief of Police . . .  (Uppercase in original; bold added.)

20                          **Tow Of Big Rig And Investigation**[4]

21        Late in the evening of November 24, 2010 (Thanksgiving Eve), John Shelby ("Mr. Shelby")

22  parked his big rig truck and trailer in the Food Maxx parking lot in Sills Plaza in Modesto.  Mr. Shelby

23  received permission from Food Maxx manager Dave Mello ("Mr. Mello") to park his truck and trailer

24

25  effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed,
    considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does

26  not rule on evidentiary matters in a summary judgment context, unless otherwise noted.

27        [3]        The City and Officer Robertson will be referred to collectively as "defendants."

28        [4]        The following summary of the tow and investigation at issue in this action is summarized from the City's
    Police Department Investigation Report No. 11-5110 ("investigation report").

1  in the parking lot over the Thanksgiving holiday.  Shortly thereafter, Stanislaus Towing drivers Chad

2  Mahu and Ray Gomes towed away the truck and trailer using two separate tow trucks.  They required

3  two hours to complete the tows.

4          On November 26, 2010, Mr. Shelby paid Stanislaus Towing $2,450 to retrieve the truck and

5  trailer.  Mr. Shelby claims that he was provided no paper work other than the invoices which indicated

6  separate charges of $1,125 for the truck and $1,325 for the trailer.  Both invoices indicate the tows were

7  "per order of" "local police" and "owner" and that the "reason for tow" was "tow zone."

8          After the Thanksgiving holiday, Food Maxx manager Mr. Mello notes that an unknown tow

9  company came to the store to advise of a tow from the parking lot and to request a signature to a tow

10  form.  Mr. Mello advised that he did not request the tow and declined to sign the form.

11         On January 20, 2011, Officer Robertson visited Stanislaus Towing and talked with employee

12  Paula Browning ("Ms. Browning").  In response to Officer Robertson's request for written authorization

13  for the tows, Ms. Browning provided a copy of an "Impound Authorization Form" as well as two

14  invoices for the tows.  Officer Robertson characterizes the Impound Authorization Form as a general tow

15  authorization signed by Peter Sills ("Mr. Sills"), owner of Sills Plaza.  Mr. Sills claims he advised

16  Stanislaus Towing to leave vehicles unless parked for more than four hours.  Mr. Sills informed Officer

17  Robertson that he had no agent or anyone on the scene when the truck and trailer were towed.

18         Officer Robertson contacted California Highway Patrol ("CHP") Officer Bennett, a tow service

19  agreement officer, to inquire into big rig tows.  Officer Bennett advised that the CHP approved rate was

20  $450 per hour with time over one hour to be charged in no more than one-minute increments.  Officer

21  Robertson reviewed the tow of Mr. Shelby's truck and trailer with Officer Bennett, who characterized

22  the charges as excessive in that they should have been for the truck and trailer combined, not separate

23  for each vehicle.  Officer Bennett stated that the two-hour charge should have been supported by time

24  out and time records on the invoice.

25                              **Towing Agreement Termination**

26         The City's police investigation report was forwarded to the Stanislaus County District Attorney's

27  office ("DA's office").  City Police Sergeant Rick Applegate ("Sgt. Applegate") declares that on

28  February 22, 2011, he was informed that the DA's office had prepared criminal charges against

3

1    Stanislaus Towing and "which would be filed later that same day."  Sgt. Applegate further declares:

2           On February 22, 2011, I spoke with Ron Hannink and explained to him that
        Stanislaus Tow and its owners were being charged by the District Attorney's Office with
3       charging an excessive rate, which is fraud related to the towing business, and that
        therefore they were being terminated.
4

5       Sgt. Applegate's February 22, 2011 letter ("February 22 letter") terminated the towing agreement

6    "as of February 22, 2011," quoted the fraud provision, and stated that the "Stanislaus County District

7    Attorneys office has filed misdemeanor charges against Ronald and Stephanie Hannink related to

8    Modesto Police Department case number 11-5110.  As per our conversation Stanislaus Tow has been

9    terminated" pursuant to the fraud provision.  The February 22 letter failed to explain how the fraud

10   provision applied to terminate the towing agreement.

11                              **Charges Against Mr. And Ms. Hannink**

12      A February 24, 2011 criminal complaint ("criminal complaint") charged Mr. and Ms. Hannink

13   with the following misdemeanor violations of California Vehicle Code section 22658 ("section 22658")

14   in connection with Stanislaus Towing's removal of the big rig truck and trailer:

15          **Count I**: On or about November 24, 2010, defendants did commit a
        misdemeanor, TOW COMPANY CAN NOT REMOVE VEHICLE WITHOUT
16      WRITTEN AUTHORIZATION, violation of Section 22658(l)(1)(A) of the California
        Vehicle Code, in that the defendants did willfully and unlawfully remove a vehicle from
17      private property without first obtaining written authorization for doing so from the
        property owner or lessee who must have been present at the time of the removal and who
18      must have verified the alleged parking violation.[5]

19          **Count II**: On or about November 26, 2010, defendants did commit a
        misdemeanor, TOWING COMPANY KNOWINGLY CHARGED EXCESSIVE RATE,
20      violation of Section 22658(j)(2) of the California Vehicle Code, in that the defendants
        did willfully, knowingly, and unlawfully charge a vehicle owner a towing, service, or
21      storage charge at an excessive rate.[6]

22   _____

23      [5]     Section 22658(l)(1)(A) provides in pertinent part:

24          A towing company shall not remove or commence the removal of a vehicle from private property
        without first obtaining the written authorization from the property owner or lessee, . . . or an employee or
25      agent thereof, who shall be present at the time of removal and verify the alleged violation . . .

26      [6]     Section 22658(j)(2) provides in pertinent part:

27
        A person who knowingly charges a vehicle owner a towing, service, or storage charge at an
28      excessive rate . . . is guilty of a misdemeanor, punishable by a fine of not more than two thousand five

                                              4

1    **Count III**: On or about November 26, 2010, defendants did commit a misdemeanor, WRITTEN
2    NOTIFICATION OF RECOURSE IF IMPROPERLY TOWED, in violation of <u>Section 22658(l)(1)(C)(iii) of the California Vehicle Code</u>, in that the defendants did willfully and unlawfully
     fail to provide to a vehicle owner or his agent claiming a towed vehicle, a separate notice providing the
3    telephone number of the appropriate local law enforcement or prosecuting agency.[7]

4            **Count IV**: On or about November 26, 2010, defendants did commit a
     misdemeanor, FAILED TO PROVIDE WRITTEN NOTIFICATION OF
5    AUTHORIZATION, violation of <u>Section 22658(l)(1)(C)(i) of the California Vehicle
     Code</u>, in that the defendants did willfully and unlawfully fail to provide to a vehicle
6    owner or his agent claiming a towed vehicle, a photocopy of the written authorization
     from the property owner or lessee who authorized the towing of the vehicle.[8]   (Bold,
7    underling and uppercase in original.)

8
       Plaintiffs note that the February 22 letter incorrectly stated that the four criminal complaint
9
     misdemeanor charges (collectively the "section 22658 charges") had been filed against Mr. and Ms.
10
     Hannink in that the section 22658 charges were merely pending and were not filed until February 24,
11
     2011, two days after the February 22 letter.  Plaintiffs further note that the City terminated the towing
12
     agreement based on its determination that the section 22658 charges constituted "fraud related to the
13
     towing business" to invoke the fraud provision.
14
                                      **Plaintiffs' Claims**
15
       Plaintiffs proceed on their First Amended Complaint for Civil Rights Violations and Breach of
16
     Contract ("FAC") to allege:
17

18    ───────────────────

19        hundred dollars ($2,500), or by imprisonment in the county jail for not more than three months, or by both
          that fine and imprisonment.
20

21        [7]      Section 22658(l)(1)(C)(iii) provides in pertinent part:

22               The towing company shall also provide to the vehicle owner or the agent a separate notice that
          provides the telephone number of the appropriate local law enforcement or prosecuting agency by stating
23        "If you believe that you have been wrongfully towed, please contact the local law enforcement or
          prosecuting agency at [insert appropriate telephone number]." . . .
24

25        [8]      Section 22658(l)(1)(C)(i) provides:

26               When the vehicle owner or his or her agent claims the vehicle, the towing company prior to
          payment of a towing or storage charge shall provide a photocopy of the written authorization to the vehicle
27        owner or the agent.

28

                                            5

1.   A (second) breach of contract claim that defendants unjustifiably terminated the towing agreement in that the section 22658 charges "do not fall under the categories for unilateral termination" in the fraud provision; and

2.   A (third) declaratory relief claim that the City may not terminate the towing agreement "based on mere allegations of criminal conduct where the conduct alleged does not constitute fraud in the Towing Services business."

The FAC also alleges a (first) 42 U.S.C. § 1983 claim which is not subject to plaintiffs' summary adjudication motion.

## DISCUSSION

### Summary Judgment/Adjudication Standards

Plaintiffs seek summary adjudication as to the FAC's breach of contract and declaratory relief claims that the City breached the towing agreement in that the section 22658 charges, which were not filed at termination of the towing agreement, fail to invoke the fraud provision. Defendants contend that the City properly terminated the towing agreement given pending criminal charges for excessive charges.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey*

1   *v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*,

2   398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82

3   S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.

4   1984).   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

5   inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for

6   summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

7   S.Ct. 2505 (1986)

8        The evidence of the party opposing summary judgment is to be believed and all reasonable

9   inferences from the facts must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106

10   S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The inquiry is "whether the evidence presents

11   a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

12   prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

13        To carry its burden of production on summary judgment, a moving party "must either produce

14   evidence negating an essential element of the nonmoving party's claim or defense or show that the

15   nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of

16   persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

17   Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to

18   prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case");

19   *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).   A

20   "complete failure of proof concerning an essential element of the nonmoving party's case necessarily

21   renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v.*

22   *Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

23        "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the

24   court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech*

25   *Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material.

26   Only disputes over facts that might affect the outcome of the suit under the governing law will properly

27   preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

28        "If a moving party fails to carry its initial burden of production, the nonmoving party has no

7

1   obligation to produce anything, even if the nonmoving party would have the ultimate burden of

2   persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

3   "If, however, a moving party carries its burden of production, the nonmoving party must produce

4   evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

5   at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

6   fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

7   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry

8   of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

9   make the showing sufficient to establish the existence of an element essential to that party's case, and

10  on which that party will bear the burden of proof at trial.")

11          "But if the nonmoving party produces enough evidence to create a genuine issue of material fact,

12  the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

13  106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough

14  'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp.*

15  *v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-

16  289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the

17  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

18          Under F.R.Civ.P. 56(g), a summary judgment/adjudication motion, interlocutory in character,

19  may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action,

20  summary judgment may be proper as to some causes of action but not as to others, or as to some issues

21  but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123

22  (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v.*

23  *Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant

24  summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v.*

25  *F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

26          As discussed below, defendants raise factual issues to preclude summary adjudication for

27  plaintiffs.

28  / / /

                                                          8

## Contract Interpretation

Plaintiffs argue that their motion is "purely" a legal issue of contract interpretation in that the fraud provision is not ambiguous and thus expressly prohibited the City's premature termination of the towing agreement.  Defendants contend that the fraud provision entitled the City to terminate the towing agreement under the circumstances.

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code, § 1638.  Fundamental rules of contract interpretation are based on the premise that interpretation of a contract must effectuate the parties' "mutual intention."  *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370 (1995).  The parties' mutual intention at the time the contract is formed governs interpretation.  Cal. Civ. Code, § 1636; *Waller*, 11 Cal.4th at 18, 44 Cal.Rptr.2d 370.  If possible, the parties' intention "is to be ascertained from the writing alone."  Cal. Civ. Code, § 1639.

The clear and explicit meaning of contract provisions, interpreted in their ordinary popular sense, unless used by the parties in a technical sense or a special meaning is given them by usage, controls judicial interpretation.  Cal. Civ. Code, §§ 1638, 1644; *Waller*, 11 Cal.4th at 18, 44 Cal.Rptr.2d 370.  A contract is to be interpreted "as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."  Cal. Civ. Code, § 1643.

"The first step is to examine the 'clear and explicit' meanings of the terms as used in their 'ordinary and popular sense.'"  *In re K F Dairies, Inc. & Affiliates v. Fireman's Fund Ins.*, 224 F.3d 922, 925 (9th Cir. 2000) (quoting *AIU Ins. Co. v. Superior Ct.*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820 (1990)).  "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning."  *AIU Ins.*, 51 Cal.3d at 822, 274 Cal.Rptr. 274.

"Under California law, interpretation of a contract is an issue of law if '(a) the contract is not ambiguous; or (b) the contract is ambiguous but no parole evidence is admitted or the parole evidence is not in conflict.'"  *Meridian Project Systems, Inc. v. Hardin Const. Co., LLC*, 426 F.Supp.2d 1101, 1109 (E.D. Cal. 2006) (quoting *Centigram Argentina, S.A. v. Centigram Inc.*, 60 F.Supp.2d 1003, 1007 (N.D. Cal.1999)).  "Whether a contract provision is ambiguous is a question of law."  *Meridian Project*

1   *Systems*, 426 F.Supp.2d at 1109.

2       "An ambiguity arises when language is reasonably susceptible of more than one application to

3   material facts. There cannot be an ambiguity per se, i.e., an ambiguity unrelated to an application."

4   *California State Auto. Assn. Inter–Ins. Bureau v. Superior Court,* 177 Cal.App.3d 855, 859, fn. 1, 223

5   Cal.Rptr. 246 (1986); *see Herzog v. National American Ins. Co.,* 2 Cal.3d 192, 199, fn. 5, 84 Cal.Rptr.

6   705, 465 P.2d 841 (1970) ("language which might be considered ambiguous as applied to some

7   circumstances is not necessarily ambiguous per se").

8       These contract interpretation principles apply to "[a]ll contracts, whether public or private."

9   Moreover, "[a]ny uncertainty in the contract must be construed against the drafter, even if the drafter is

10  a public body." *Roth v. Department of Veterans Affairs*, 110 Cal.App.3d 622, 628, 167 Cal.Rptr. 552

11  (1980).   "However, a contract is not automatically construed against a drafter where . . . the contract is

12  the result of negotiations." *County of San Joaquin v. Workers' Comp. Appeals Bd.*, 117 Cal.App.4th

13  1180, 1186, 12 Cal.Rptr.3d 406 (2004).

14      "The law does not favor penalties or forfeitures and provisions in a contract are construed strictly

15  against them." *Roth*, 110 Cal.App.3d at 628, 167 Cal.Rptr. 552.   Nonetheless, "when different

16  constructions of a provision are otherwise equally proper, [the interpretation] is to be taken which is

17  most favorable to the party in whose favor the provision was made."   Cal. Code Civ. Proc., § 1864.

18      With these contract principles in mind, this Court turns to the parties' respective positions as to

19  application of the fraud provision.

20                                  **Premature Termination**

21      Plaintiffs take issue with termination of the towing agreement prior to the filing of the section

22  22658 charges.   Plaintiffs argue that the City lacked authority to terminate the towing agreement as of

23  the February 22 letter in that Mr. and Ms. Hannink had not been cited, charged or arrested with a crime

24  to trigger the fraud provision as the section 22658 charges were merely pending.   Plaintiffs point to the

25  February 24, 2011 filing of the criminal complaint as the first time Mr. and Ms. Hannink were charged.

26  Plaintiffs point to the City's admission in its answer to the FAC that "Plaintiffs were terminated under

27  the Agreement on February 22, 2011, based upon pending criminal charges," which were later filed.

28  Plaintiffs conclude that the termination of the towing agreement was premature and thus invalid in that

                                          10

1   pending charges fail to invoke the fraud provision's "cited, arrested and/or charged" requirement.

2         Defendants respond that the fraud provision "does not mandate that the charge be filed against

3   Plaintiffs; rather the contract only demands that Plaintiffs be charged." Defendants note the absence of

4   dispute that Mr. and Mrs. Hannink were charged with the section 22658 charges.

5         Plaintiffs attempt to raise a technicality that the towing agreement was terminated two days prior

6   to the filing of the section 22658 charges.  The fraud provision effectively reads that the towing

7   agreement may be terminated if Stanislaus Towing or any of its agents or employees "is cited, arrested

8   and/or charged . . ." Mr. and Mrs. Hannink were ultimately charged.  Plaintiffs take issue with the

9   timing of the charges in relation to towing agreement termination, not with the fact that Mr. and Mrs.

10  Hannink were charged.  Plaintiffs' hyper-technical reading of the fraud provision contracts a reasonable

11  interpretation of the fraud provision.  Plaintiffs do not prevail based on a two-day delay to file the 22658

12  charges.

13                              **Fraud Related To Towing**

14        The fraud provision lists eight categories of crimes to invoke suspension or termination of the

15  towing agreement.  Plaintiffs argue that the section 22658 charges most resemble the fraud provision's

16  "fraud related to the towing business" category.  Plaintiffs contend that the section 22658 charges do not

17  constitute "fraud related to the towing business."

18        Relying on Webster's New Universal Unabridged Dictionary Deluxe Second Edition (1983),

19  plaintiffs advocate a fraud definition of "deceit . . .; an intentional deception to cause a person to give

20  up some property or some lawful right."  As such, plaintiffs argue that a crime of fraud requires

21  "intentional deception" which is not a required element of the section 22658 charges.  Plaintiffs argue

22  that only the criminal complaint's section 22658(j)(2) Count II (charging excessive rates) discusses

23  intent and that the section 22658 charges reference only willful, knowing or unlawful conduct, not fraud.

24        California Penal Code section 7 ("section 7") provides that "'wilfully,' when applied to the intent

25  with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make

26  the omission referred to.  It does not require any intent to violate law, or to injure another, or to acquire

27  any advantage."  Section 7 further provides that "'knowingly' imports only a knowledge that the facts

28  exist which bring the act or omission within the provisions of this code.  It does not require any

                                              11

1   knowledge of the unlawfulness of such act or omission."

2          Plaintiffs contend that the criminal complaint lacks "allegations of the essential element of fraud

3   – intentional deception" so that the section 22658 charges are not "fraud related to the towing business"

4   to invoke the fraud provision and in turn termination of the towing agreement.  Plaintiffs note that the

5   section 22658 charges lack intent "to deceive another and cause injury or acquire an advantage over that

6   person."  Plaintiffs characterize fraud as "a greater offense than what was actually charged."

7          Like plaintiffs, defendants also focus on the criminal complaint's section 22658(j)(2) Count II

8   charge which arose from plaintiffs' charging an excessive rate after their employees' illegal tows.

9   Defendants point to section 22568(i)(1)(A) which addresses excessive charges:

10                 A charge for towing or storage, or both, of a vehicle under this section is
                   excessive if the charge exceeds the greater of the following:
11
12                 (i) That which would have been charged for that towing or storage, or both, made
                   at the request of a law enforcement agency under an agreement between a towing
                   company and the law enforcement agency that exercises primary jurisdiction in the city
13                 in which is located the private property from which the vehicle was, or was attempted to
                   be, removed . . .
14
                   (ii) That which would have been charged for that towing or storage, or both,
15                 under the rate approved for that towing operator by the California Highway Patrol for the
                   jurisdiction in which the private property is located and from which the vehicle was, or
16                 was attempted to be, removed.

17   Defendants argue plaintiffs' charges evidence fraud in that they exceed the CHP's higher of applicable

18   rates and include unacceptable separate charges for the truck and trailer, which should been towed as

19   a combined unit.

20          Defendants characterize the tow as illegal under California Vehicle Code section 10851(a)

21   ("section 10851(a)"), which provides:

22                  Any person who . . . takes a vehicle not his or her own, without the consent of
                   the owner thereof, and with intent either to permanently or temporarily deprive the owner
23                 thereof of his or her title to or possession of the vehicle, whether with or without intent
                   to steal the vehicle . . . is guilty of a public offense . . .
24

25   Defendants argue that an unlawful tow with specific intent to deprive the owner of possession violates

26   section 10851(a).  *See People v. Barrick*, 33 Cal.3d 115, 135-136, 187 Cal.Rptr. 716 (1982) ("a vehicle

27   could be towed with the specific intent to deprive the owner of possession without being towed for the

28   purpose of using or operating the vehicle").  To further support fraud, defendants note that Stanislaus

12

Towing's invoices indicate the tows were "per order of" "local police" and "owner" and that the "reason for tow" was "tow zone," although no peace officer requested the tow and no owner or agent written authorization was obtained for the tow.  Defendants continue that fraud is further evidenced by demand for money prior to releasing the illegally towed truck and trailer.

Defendants further characterize plaintiffs' actions as an unfair business practice under the California Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq. *See People ex rel. Renne v. Servantes*, 86 Cal.App.4th 1081, 1095,103 Cal.Rptr.2d 870 (2001) (towing company committed "unfair business practices" to violate UCL by towing vehicles from private property without authorization from property owners and imposing excessive towing and storage charges).  Plaintiffs respond that an unlawful or unfair practice is not necessarily fraudulent under the UCL.  *See* Cal. Bus. & Prof. Code, § 17200 (defining "unfair competition" as "any unlawful, unfair or fraudulent business act or practice").

At a minimum, the record reveals questions of fact whether the section 22658 charges invoke "fraud related to the towing business."  The evidence reviewed in defendants' favor suggests that the truck and trailer were wrongfully towed without a written authorization from property owner Mr. Sills or his agent and released upon payment of excessive fees.  Such conduct envisions fraud related towing.  Plaintiffs' reliance on the mere wording of the section 22658 charges is unavailing in that the record raises factual issues whether the truck and trailer were towed deceptively to impose excessive charges.  The factual issues preclude summary adjudication.

**Discretion**

Defendants argue that they are entitled to immunity under California Government Code section 820.2 ("section 820.2") in that the fraud provision permits suspension or termination "at the discretion of the Chief of Police."

Section 820.2 provides:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Section 820.2 "confers immunity for basic policy decisions which have been committed to coordinate branches of government." *Odello Bros. v. County of Monterey*, 63 Cal.App.4th 778, 793, 73

1  Cal.Rptr.2d 903 (1998) (county decision as to its flood plan and to breach a levee in a particular manner

2  "were plainly acts within County's discretion" to bar trespass claim).  Section 820.2 "does not shield

3  government entities from liability for ministerial decisions taken after the implementation of basic policy

4  decisions."  *Odello Bros.,* 63 Cal.App.4th 778, 793, 73 Cal.Rptr.2d 903.  "In deciding whether action

5  is discretionary, the California Supreme Court has rejected a mechanical analysis but focused upon

6  policy considerations behind the grant of the immunity."  *Odello Bros.,* 63 Cal.App.4th 778, 793, 73

7  Cal.Rptr.2d 903.

8      Defendants contend that Sgt. Applegate exercised discretion when he opted to terminate the

9  towing agreement and that the City likewise benefits from such immunity under California Government

10  Code section 815.2(b) ("section 815.2(b)") ("Except as otherwise provided by statute, a public entity is

11  not liable for an injury resulting from an act or omission of an employee of the public entity where the

12  employee is immune from liability.")

13      Plaintiffs contend that section 820.2 immunity does not apply to breach of contract claims.

14  Plaintiffs rely on California Government Code section 814 ("section 814"), which provides: "Nothing

15  in this part affects liability based on contract or the right to obtain relief other than money or damages

16  against a public entity or public employee."  Plaintiffs point out that section 814 applies given section

17  820.2's opening reference "[e]xcept as otherwise provided by statute."

18      Plaintiffs seek to impose liability based on contract.  Defendants fail to demonstrate that section

19  820.2 applies to plaintiffs' contract claims.  In addition, the basic policy decision at issue is inclusion

20  of the fraud provision in towing agreements.  Termination of the towing agreement is a ministerial

21  decision to implement a basic policy to discourage fraud related to towing.  Moreover, the basis for

22  defendants' reliance on section 820.2 immunity is unclear in that Sgt. Applegate is not a defendant.

23  Plaintiffs do not place his liability at issue.  Defendants fail to provide authority that section 815.2(b)

24  applies to defendants when Sgt. Applegate's liability is not at issue.  As such, defendant's fail to support

25  immunity defenses.

26  / / /

27  / / /

28  / / /

14

1

## CONCLUSION AND ORDER

2       For the reasons discussed above, this Court DENIES plaintiffs summary adjudication in their

3   favor on the FAC's breach of contract and declaratory relief claims.

4

5

6

7

8       IT IS SO ORDERED.

9   **Dated:    May 23, 2012**                    _____/s/ Lawrence J. O'Neill_____
                                            UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28